IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                               :   **Chapter 11**
                                                    :
NEXITY FINANCIAL CORPORATION,[1]                    :   Case No. 10-12293 (KJC)
                                                    :
                                    Debtor.         :   Hearing Date: August 27, 2010 at 11:00 a.m. (EDT)
                                                    :   Obj. Deadline: August 20, 2010 at 4:00 p.m. (EDT)
---------------------------------------------------------------x

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FBR CAPITAL MARKETS & CO. AS PLACEMENT AGENT FOR THE DEBTOR IN CONNECTION WITH A PROPOSED EQUITY OFFERING *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AND (B) WAIVING LOCAL RULE 2016-2 DESCRIPTION REQUIREMENTS

Nexity Financial Corporation ("Nexity" or the "Debtor"), as a debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), submits this application (the "Application") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtor to retain and employ FBR Capital Markets & Co. ("FBR") as its placement agent in connection with the Debtor's proposed offering of equity securities of the Reorganized Debtor *nunc pro tunc* to the Petition Date (as defined herein) and (b) waiving Local Rule 2016-2 description requirements. In support of this Application, the Debtor submits the *Declaration of Brian Taylor in Support of the Debtor's Application for Entry of an Order (A) Authorizing the Retention and Employment of FBR Capital Markets & Co. as Placement Agent for the Debtor*

---

[1] The last four (4) digits of the Debtor's federal identification number are 2937. The Debtor's principal place of business is located at 3680 Grandview Parkway, Suite 200, Birmingham, Alabama 35243.

*Nunc Pro Tunc to the Petition Date Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and (B) Waiving Local Rule 2016(2) Description Requirements* (the "Taylor Declaration"), a copy of which is attached hereto as Exhibit B. In further support of this Application, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over the Application under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b). The statutory basis for the relief requested herein is section 327 and 328 of title 11 of the Bankruptcy Code.

## BACKGROUND

2. On July 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

### A. *General Business*

3. The Debtor is the holding company for Nexity Bank.[2] As such, the Debtor is regulated by the Federal Reserve Board as a bank holding company under the Bank Holding Company Act of 1956. Nexity Bank is headquartered in Birmingham, Alabama with additional correspondent banking offices in Atlanta, Georgia; Myrtle Beach and Columbia, South Carolina; Dallas, Texas; Orlando, Florida; Milwaukee, Wisconsin; and Charlotte and Raleigh, North Carolina.

4. Nexity Bank is an Alabama state-chartered bank that is not a member of the Federal Reserve System. Its primary regulators are the Federal Deposit Insurance

---

[2] The Debtor and its non-Debtor affiliates, including Nexity Bank, are collectively referred to herein as the "Company."
2

*Nunc Pro Tunc to the Petition Date Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and (B) Waiving Local Rule 2016(2) Description Requirements* (the "Taylor Declaration"), a copy of which is attached hereto as Exhibit B. In further support of this Application, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over the Application under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b). The statutory basis for the relief requested herein is section 327 and 328 of title 11 of the Bankruptcy Code.

## BACKGROUND

2. On July 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

### A. *General Business*

3. The Debtor is the holding company for Nexity Bank.[2] As such, the Debtor is regulated by the Federal Reserve Board as a bank holding company under the Bank Holding Company Act of 1956. Nexity Bank is headquartered in Birmingham, Alabama with additional correspondent banking offices in Atlanta, Georgia; Myrtle Beach and Columbia, South Carolina; Dallas, Texas; Orlando, Florida; Milwaukee, Wisconsin; and Charlotte and Raleigh, North Carolina.

4. Nexity Bank is an Alabama state-chartered bank that is not a member of the Federal Reserve System. Its primary regulators are the Federal Deposit Insurance

---

[2] The Debtor and its non-Debtor affiliates, including Nexity Bank, are collectively referred to herein as the "Company."

Corporation (the "FDIC") and the Alabama State Banking Department (the "Banking Department"). Nexity Bank conducts deposit business in all 50 states in the United States and conducts loan business primarily in the southeastern United States and Texas.

**B.     *Capital Structure***

**(i)     *Revolving Credit Agreement***

5.     The Debtor is a party to a revolving credit facility (the "Credit Facility") pursuant to that certain Credit Agreement dated December 18, 2007, as amended by the Amendment to Credit Agreement, Waiver and Reaffirmation of Pledge Agreement dated as of March 1, 2009 and the Second Amendment to Credit Agreement, Waiver and Reaffirmation of Pledge Agreement dated as of August 31, 2009 (the "Revolving Credit Agreement"), between the Debtor and Bank of America, N.A. (the "Secured Lender"), as successor to LaSalle Bank National Association. As of June 30, 2010, the Debtor owed the Secured Lender $14.2 million in principal amount plus accrued interest of $350,802 in connection with the Credit Facility. The common stock of Nexity Bank held by the Debtor is pledged as collateral under the Credit Facility.

**(ii)     *Trust Preferred Securities (TruPS)***

6.     In 2004 and 2008, the Debtor's wholly owned trusts, Nexity Capital Trust II and Nexity Capital Trust III (the "Trusts"), issued $12 million and $10 million, respectively, in trust preferred securities (the "TruPS"). Under the documents establishing the Trusts, the Trusts issued the TruPS and with those proceeds each purchased a debenture from the Debtor. Payments by the Debtor on the debenture to each Trust in turn provide funds to the Trust to pay interest and principal on the TruPS. The Debtor is permitted to suspend payments on the debentures for up to five years, and, beginning with the payment dates of July 1, 2009 and July

3

23, 2009, it deferred three of its quarterly interest payments in 2009 to each Trust. As of June 30, 2010, the Debtor had outstanding in the aggregate $22 million of TruPS in principal amount plus accrued interest of approximately $1,265,848.

### (iii) *Equity Interests*

7. As of June 25, 2010, the Debtor's authorized capital stock consisted of 800 million shares of common stock, $0.01 par value per share (the "NFC Common Stock"), of which 7,766,393 shares were outstanding. Additionally, the Debtor had authorized 5,000,000 shares of preferred stock, par value $0.01 per share, none of which was issued and outstanding, and of that amount 15,000 shares of Series A Junior Participating Preferred Stock were reserved for issuance pursuant to a preferred rights agreement.

## C. *Events Leading to Filing of Chapter 11 Case*

### (i) *2009 Financial Results*

8. Nexity had a consolidated net loss for 2009 of $62.0 million, compared to a loss of $13.0 million in 2008. The primary factors affecting the higher net loss in 2009 were increases in Nexity's provision for loan losses of $23.1 million or 80.7%, noninterest expenses of $5.5 million or 20.4%, and an $8.0 million or 44.0% decrease in net interest income.

9. Moreover, Nexity's credit quality continued to deteriorate in 2009 due to the economic recession and a challenging real estate market. The provision for loan losses was $51.8 million, $28.7 million, and $805,000 in 2009, 2008, and 2007, respectively. The provision for loan losses was $23.1 million higher in 2009 primarily because of higher net charge-offs. Net loan charge-offs were $44.4 million, or 7.01% of average loans in 2009 compared to $21.6 million, or 3.15% of average loans in 2008 and $423,467, or 0.07% of average loans in 2007. The allowance for loan losses totaled 4.22% of total loans as of December 31, 2009 compared to 2.22% of loans as of December 31, 2008, and 1.24% as of December 31, 2007. As of December

4

31, 2009, nonperforming assets as a percent of total loans and other real estate owned increased to 21.59% from 13.14% at December 31, 2008.

11. Nexity Bank had a Tier 1 Leverage Ratio of 2.49% and 7.05% at December 31, 2009 and 2008, respectively, and a Tier 1 Risk-Based Capital Ratio[3] of 5.75% and 10.33% at December 31, 2009 and 2008, respectively. As of March 31, 2010, Nexity Bank's Tier 1 Leverage Ratio was 2.49%, its Tier 1 Risk-Based Capital Ratio was 4.25% and its Total Risk-Based Capital Ratio was 5.75%. Under the FDIC's capital standards, a bank is "significantly undercapitalized" if the bank has a Total Risk-Based Capital Ratio of less than 6.0% or a Tier 1 Leverage Ratio that is less than 3.0% or a Tier 1 Risk-Based Capital Ratio that is less than 3.0%. Under this definition, Nexity Bank's capital ratios place it in the significantly undercapitalized category.

11. As of February 9, 2009, the Debtor voluntarily delisted and deregistered, and ceased to file reports and other information with the Securities and Exchange Commission (the "SEC").

### (ii) Regulatory Considerations

12. On March 20, 2009, Nexity Bank entered into a Stipulation and Consent to the Issuance of an Order to Cease and Desist (the "C&D Order") with the FDIC and the Banking Department, requiring that Nexity Bank and its affiliates, successors and assigns to cease and desist from certain unsafe and unsound banking practices. The C&D Order requires, among other things, that Nexity Bank meet and maintain a Tier 1 Leverage Ratio of not less than 8% and a Total Risk-Based Capital Ratio of not less than 12% by June 30, 2009. Nexity Bank's

---

[3] The term "Tier 1 Risk-Based Capital Ratio" means the ratio of qualifying total capital to risk-weighted assets, as calculated in accordance with the appropriate banking agency's capital regulations.

5

failure to comply with the C&D Order could result in further sanctions against it, including being placed into receivership.

13.     Effective June 9, 2009, Nexity Financial Corporation consented to the issuance of a Cease and Desist Order (the "<u>Federal Reserve Order</u>") by the Board of Governors of the Federal Reserve System (the "<u>Federal Reserve Board</u>") and the Banking Department. The Federal Reserve Order requires, among other things, that the Debtor refrain from paying dividends, taking any action that would reduce Nexity Bank's capital, and making any distributions of interest, principal, or other sums on subordinated debentures or TruPS without prior written regulatory approval. The Federal Reserve Order also requires the development and implementation of certain actions to ensure that the Debtor's wholly owned subsidiary, Nexity Bank, complies with the C&D Order and any other supervisory action taken by Nexity Bank's federal or state regulators.

14.     The restriction on payments of dividends by Nexity Bank to the Debtor, due to continuing losses in Nexity Bank, general regulatory restrictions and the prohibitions set forth in the C&D Order, has placed significant pressure on the Debtor's ability to service its debt requirements on its secured debt and the TruPS. This debt service will be exceedingly difficult for the Debtor in the short term, and nearly impossible in the long-term. The Debtor has defaulted on a number of covenants with the Secured Lender and has sought waivers for such default, and the Debtor has suspended payments of interest to its TruPS holders. Although the Debtor is permitted to suspend interest payments to its TruPS holders for up to 20 quarters, without incurring a default under the relevant TruPS documents, the Debtor does not expect to be able to resume interest payments to its TruPS holders, and eventually to repay the principal, under current conditions.

6

### D. *The Prepackaged Plan*

15. As a result of the significant losses and reduction of capital which the Debtor and Nexity Bank have experienced over the past two years, combined with the restrictions imposed upon them under both the Federal Reserve Order and the C&D Order, the Debtor has spent the past 18 months exploring various capital raising alternatives. As part of such efforts, the Debtor has pursued an "out of court" restructuring, which would include, among other things, (i) raising at least $175 million in new equity capital through a private placement of up to 800 million shares of NFC Common Stock, (ii) an agreement by the Secured Lender to discharge the outstanding principal and interest owed under the Revolving Credit Agreement for a discounted amount and (iii) with the agreement of the Secured Lender, repurchasing all of the TruPS for a percentage of their stated liquidation amount. While the Debtor received the affirmative consent of the Secured Lender and the majority of TruPS holders to the proposed restructuring, the Debtor was unable to obtain the unanimous acceptance of *all* TruPS holders necessary to effectuate the recapitalization without court involvement. Accordingly, the Debtor determined that it was necessary to commence a prepackaged chapter 11 case to accomplish a restructuring of its debt and to facilitate the recapitalization of Nexity Bank's operations.

16. Accordingly, on July 1, 2010, the Debtor began soliciting votes on the *Prepackaged Plan of Reorganization of Nexity Financial Corporation Under Chapter 11 of the Bankruptcy Code* (as amended on July 15, 2010, the "Prepackaged Plan"), through its *Disclosure Statement Relating to the Prepackaged Plan of Reorganization of Nexity Financial Corporation Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. Capitalized terms used but not otherwise defined therein have the meanings assigned to such terms in the Prepackaged Plan and the Disclosure

Statement. The Prepackaged Plan has been accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

17. The Confirmation Hearing with respect to the Prepackaged Plan is scheduled to commence before this Court on August 27, 2010.

## RETENTION OF FBR CAPITAL MARKETS & CO.

18. Separately, but subject to and conditioned upon approval and consummation of the Prepackaged Plan, the Debtor is in the process of raising a gross amount of at least $175 million in new capital through the sale of shares of common stock of the Reorganized Debtor (the "Offering"). These additional funds will be used to make the distributions contemplated under the Prepackaged Plan, pay the costs and expenses associated with the Chapter 11 Case and the transactions related to the recapitalization, support the Debtor's ongoing working capital needs and contribute urgently-needed capital to the Debtor and Nexity Bank.

19. Prior to the Petition Date, pursuant to that Amended Engagement Letter, dated July 16, 2010, by and between FBR, Nexity and Nexity Bank (the "Agreement"), the Debtor retained FBR, *inter alia*,[4] to act as its exclusive initial purchaser and/or placement agent in connection with the Offering. A copy of the Agreement is attached as Exhibit 1 to the Taylor Affidavit. Under the terms of the Agreement, FBR has not and will not provide any post-petition advisory services to the Debtor. In addition, FBR will receive compensation only upon consummation of the Offering and only out of the proceeds of the Offering. All such compensation will be paid after the Confirmation Date. Further, most of the services that the Debtor requested from FBR were completed prepetition. Accordingly, the Debtor does not

---

[4] Pursuant to the Agreement, the Debtor also retained FBR as its restructuring advisor to assist the Debtor in analyzing, structuring, negotiating and effectuating the prepetition stages of its restructuring. The restructuring advisory assignment ended by its terms upon commencement of the Chapter 11 Case.

8

believe that FBR constitutes a professional under section 327 of the Bankruptcy Code, and does not believe that FBR's retention, employment and subsequent compensation is properly subject to approval under that section. However, to comply with a request of the Office of the United States Trustee of the District of Delaware (the "U.S. Trustee"), and out of an abundance of caution, the Debtor seeks an order approving FBR's retention and employment. Notwithstanding the filing of this application and the seeking of the relief set forth herein, the Debtor and FBR reserve the right to submit that such relief is not necessary or appropriate.

## RELIEF REQUESTED

29. By this Application, the Debtor seeks Court approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code to retain and employ FBR as placement agent in connection with the Offering *nunc pro tunc* to the Petition Date. The Debtor has selected FBR because of its extensive expertise, experience and knowledge in the securities industry and also because of its knowledge of the facts and circumstances surrounding the Debtor's capital-raising efforts. The facts and circumstances supporting this Application are further set forth in the Taylor Affidavit. Additionally, pursuant to Local Rule 2016-2(g), the Debtor requests a waiver of the application and information requirements contained in Local Rule 2016-2.

## SERVICES RENDERED AND TO BE RENDERED

30. Pursuant to the terms of the Agreement, FBR has rendered, is rendering and/or will render the following services:

(a) Identifying, meeting with and soliciting potential investors for the Offering;

(b) Organizing, participating in and facilitating meetings between potential investors and the Company, including due diligence meetings;

(c) Participating in the preparation of necessary documents for the Offering, including presentations to potential investors;

(d) Advising the Company in connection with the pricing of the Securities to be sold in the Offering;

(e) Organizing, participating in and facilitating the closing of the Offering;

(f) As requested by the Company, providing periodic status reports and updates to regulatory authorities regarding the Offering; and

(g) Performing financial analysis of the Company and comparisons with other companies in its industry.

## DISINTERESTEDNESS OF PROFESSIONALS

31.     As set forth in more detail in the Taylor Affidavit and subject to the exceptions disclosed or described therein, FBR has informed the Debtor that FBR (a) does not hold or represent any interest adverse to the Debtor's estate that would impair FBR's ability to perform professional services objectively for the Debtor in accordance with section 327 of the Bankruptcy Code, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

31.     Furthermore, based upon the Taylor Affidavit, FBR's connections with the creditors, any other party in interest or their respective attorneys are disclosed in the Taylor Affidavit.

32.     Finally, the Debtor has been informed that FBR has not provided, and will not provide, professional services to any of the creditors, other parties in interest or their attorneys with regard to the Chapter 11 Case.

33.     FBR has informed the Debtor that it will periodically review its files during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, FBR will use reasonable efforts to identify such further developments and will promptly amend the Taylor Affidavit to the extent that further disclosure is required.

## PROFESSIONAL COMPENSATION

34. FBR intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Agreement (the "Compensation Structure"). In accordance with the Agreement, FBR's compensation will be payable only if an Offering is consummated and will be payable only out of the proceeds of such Offering. The Debtor submits that such proposed compensation is reasonable, fair and appropriately reflects the nature and scope of the services that have been, are being and are to be provided by FBR; the fees paid to other leading investment banks acting as placement agents; the market rates charged for comparable services; and FBR's substantial experience with respect to the matters on which it is being retained. Most of the services that the Debtor requested from FBR were completed prepetition, as FBR is in discussions with a number of potential investors as it actively works towards raising the capital required for the Debtor's successful reorganization. Further, because the Debtor is seeking to retain FBR under Bankruptcy Code section 328(a), the Debtor believes that FBR's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" or fee enhancement under applicable law.

35. In summary, the Compensation Structure provides for the following compensation to FBR:

    (a) The Debtor has paid to FBR a $100,000 non-refundable retainer;

    (b) Concurrently with the consummation of the Offering, the Debtor shall pay (subject to certain exceptions set forth in the Agreement) in cash to FBR a fee

11

equal to 7.0% of the gross proceeds received from the sale of the securities in the Offering;

(c) Concurrently with the consummation of the Offering, the Debtor shall pay in cash to FBR a fee of $300,000 on account of FBR's restructuring advisory services; and

(d) The Debtor shall reimburse FBR upon request for FBR's reasonable and actual out-of-pocket expenses incurred in connection with FBR's services under the Agreement.

36. Finally, in accordance with the Agreement, FBR requests that its compensation be paid after the Confirmation Date, concurrently with the consummation of the Offering and out of the gross proceeds received from the Offering, but subject to the Court's approval of a final fee application to be filed with the Court.

## WAIVER OF LOCAL RULE 2016-2(d) REQUIREMENTS

37. It is not the general practice of placement agents to keep time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2 for cause. For an engagement such as the one described herein, FBR does not ordinarily maintain contemporaneous time records and provide detailed activity descriptions for the particular services rendered by FBR's employees. Moreover, most of the remaining tasks involve sales professionals contacting potential investors for the Offering. In that regard, FBR has requested that the requirement that FBR keep detailed time records be waived, and that it not be obligated to keep time records in connection with its retention by the Debtor. Because FBR is to be compensated only after the Confirmation Date and only out of the proceeds of the Offering,

RLF1 3598108v.1

and not out of the Debtor's estate, FBR should be excused from complying with the compensation procedures promulgated in Local Rule 2016-2(d) and the guidelines of the United States Trustee. The Debtor believes that FBR's request is appropriate under the circumstances and should be approved by the Court.

## INDEMNIFICATION PROVISIONS

38. As part of FBR's retention, the Debtor has agreed to certain indemnification obligations as described in the Agreement. Specifically, the Debtor has agreed to defend, indemnify and hold harmless FBR, its affiliates and subsidiaries and each and all of their officers, directors, employees, agents, controlling persons and advisors, including legal advisors, from and against all claims, losses, damages, liabilities and expenses (including reasonable attorney's fees and expenses) arising out of or in connection with the services described in the Agreement, except to the extent such claims, losses, liabilities or damages arise by virtue of FBR's willful misconduct, gross negligence or bad faith.

## BEST INTERESTS OF THE ESTATE

39. FBR is, in the Debtor's view, highly skilled and has developed a familiarity with the Debtor that will allow the Debtor to obtain the greatest value for the securities in the Reorganized Debtor at the least expense. Therefore, the Debtor believes that the retention of FBR *nunc pro tunc* to the Petition Date is in the best interests of the Debtor, its estate and its creditors.

## NOTICE

40. No trustee, examiner or statutory creditors' committee has been appointed in this Chapter 11 Case. The Debtor shall provide notice of this Application to (i) the United States Trustee, (ii) the holders of the twenty (20) largest unsecured claims against the Debtor,

(iii) counsel to the Secured Lender, (iv) the SEC, (v) the Internal Revenue Service, (vi) the Banking Department, (vii) the United States Department of Justice, (viii) FBR, (ix) counsel to FBR, (x) the FDIC and (xi) all parties that have timely filed requests for notice under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor respectfully submits that no other or further notice need be given.

## NO PRIOR REQUEST

41. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief the Court deems just and proper.

Dated: August 9, 2010
Birmingham, Alabama

_____
Name: Greg L. Lee
Title: Chief Executive Officer, Nexity Financial Corporation