# **EXHIBIT B**

------------------------------------------------------------------x
                                  :

**In re**                          :     **Chapter 11**

**NEXITY FINANCIAL CORPORATION,**[1]  :     **Case No. 10-12293 (KJC)**

           **Debtor.**          :

------------------------------------------------------------------x

### AFFIDAVIT OF BRIAN TAYLOR IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FBR CAPITAL MARKETS & CO. AS PLACEMENT AGENT FOR THE DEBTOR IN CONNECTION WITH A PROPOSED EQUITY OFFERING *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AND (B) WAIVING LOCAL RULE 2016-2 <u>DESCRIPTION REQUIREMENTS</u>

STATE OF NEW YORK      )
                            ) SS:
COUNTY OF NEW YORK    )

       BRIAN TAYLOR, being first duly sworn to oath, deposes and says:

       1.      I am a Managing Director of FBR Capital Markets & Co. ("<u>FBR</u>"). FBR is an investment banking firm with its principal place of business at 1001 Nineteenth Street North, Arlington, VA 22209. I submit this affidavit (the "<u>Affidavit</u>") in connection with the application (the "<u>Application</u>") of the above-captioned debtor and debtor in possession ("<u>Nexity</u>" or the "<u>Debtor</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>") for approval of the Debtor's retention of the firm as its placement agent in connection with the proposed offering of equity securities in the Reorganized Debtor ("the <u>Offering</u>"), and to provide disclosure required under rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the

---

[1] The last four (4) digits of the Debtor's federal identification number are 2937. The Debtor's principal place of business is located at 3680 Grandview Parkway, Suite 200, Birmingham, Alabama 35243.

"Bankruptcy Rules"). Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein. To the extent that any information disclosed herein requires amendment or modification upon FBR's completion of further analysis or as additional creditor information becomes available to it, a supplemental affidavit will be submitted to the Court reflecting such amended or modified information.

2.     FBR possesses one of the strongest institutional equities distribution capabilities in the securities industry. FBR is a top-ten ranked U.S. equities underwriter[2] and a market-maker or trader in 1,438 securities. FBR covers more than 1,400 institutional investors and has provided independent research on more than 410 companies. As a top ten-ranked investment bank,[2] FBR has established broad and deep specialized industry platforms that offer detailed industry knowledge and sector-concentrated expertise in research, trading, distribution, investing, mergers and acquisitions and capital-raising. FBR is particularly well-suited to serve as the Debtor's placement agent because of its high level of service to small- and mid-cap companies. For the last five years, it has been the #6 book-running manager for all U.S. common stock transactions for issuers with market capitalizations of $1 billion or less.[3]

3.     Prior to the Petition Date, pursuant to that Amended Engagement Letter, dated July 16, 2010, by and between FBR, Nexity and Nexity Bank, the Debtor retained FBR to act as its exclusive initial purchaser and/or placement agent in connection with the Offering. A copy of the Agreement is attached hereto as Exhibit 1.

---

[2] Source: Dealogic. Apportioned credit to all book-running managers; Rank Eligible Transactions only, US and Bermuda Issuers–All industries– 4/1/2005–3/31/2010 –All Common Stock –Market capitalization $1 billion or less.
[3] *Id.*

## DISINTERESTEDNESS

4.      Based upon available information, FBR has made an effort to identify all of its connections, if any, with the Debtor, its primary creditors, equity security holders, and other parties in interest, as well as their respective attorneys and accountants.  Despite the efforts described herein to identify and disclose FBR's relationships with parties in interest in the Chapter 11 Case and/or the Offering, FBR is unable to state with certainty that every client relationship or other connection has been disclosed.  FBR will continue to monitor all of its connections with such parties and will supplement this affidavit in the future if additional connections become known to it.  In addition, FBR will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, FBR will inform the Court.

5.      In connection with the preparation of the Affidavit, FBR has (a) researched its internal records and (b) issued a general inquiry to FBR's advisory professionals who have worked on the Offering or provided restructuring advice to Nexity, in each case relying on information provided by the Debtor, to determine whether FBR has any connections with the Debtor, creditors and other parties in interest.

6.      To the best of my knowledge, after due inquiry, FBR is a "disinterested person," as that term is defined in section 101(14) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as modified by Section 1107(b) of the Bankruptcy Code, in that FBR, and its advisory professionals that have worked on the Offering or provided restructuring advice to Nexity, except as otherwise set forth herein:

- are not creditors, equity holders or insiders of the Debtor;
- are not and were not, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

- do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

7.    FBR has in the past represented, currently represents and/or may in the future represent, in matters wholly unrelated to this Chapter 11 Case and/or the Offering, entities that are claimants or interest holders of the Debtor (including, without limitation, those entities set forth in paragraph 13). While FBR may have provided or may in the future provide services to such parties and other parties in interest involved in the Chapter 11 Case and/or the Offering, none of those relationships or matters have or will have any connection with the Chapter 11 Case and/or the Offering.

8.    Certain of FBR's professionals may use the services of the Debtor, creditors, suppliers, customers or other parties in interest, none of which are material to such professional or to FBR.

9.    FBR does not believe there is any connection or interest (as such terms are used in section 101(14) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) between FBR and (i) the United States Trustee or any person employed by the Office of the United States Trustee.

10.    FBR Capital Markets Corporation's private equity business may hold investment positions in entities that that may be parties in interest in the Chapter 11 Case and/or the Offering. To the best of my knowledge, FBR Capital Markets Corporation does not hold any investment positions that constitute a conflict of interest that would disqualify FBR from providing services described in the Agreement. Further, FBR Capital Markets Corporation does not share any information relating to its investment activities with the FBR professionals seeking retention in the Chapter 11 Case, and the FBR professionals providing services to the Debtor will

not share confidential or otherwise non-public information received in the course of FBR's engagement with FBR Capital Markets Corporation.

11.     If this Court approves the proposed retention and employment of FBR by the Debtor, FBR will not accept any engagement for or perform any services for any entity or person other than the Debtor in connection with the Chapter 11 Case and/or the Offering. FBR will, however, continue to provide professional services to entities or persons that may be creditors of the Debtor or parties in interest in the Chapter 11 Case and/or the Offering or to otherwise have interest in the Chapter 11 case and/or the Offering; *provided, however*, that such services do not relate to, or have any direct connection with the Chapter 11 Case or the Offering.

## FBR'S CONNECTIONS WITH THE POTENTIAL PARTIES IN INTEREST IN MATTERS UNRELATED TO THIS CHAPTER 11 CASE

12.     FBR has reviewed a list of the Debtor's secured creditor, the Debtor's largest unsecured creditors, present officers and directors and parties holding equity interests in the Debtor (the "Potential Parties in Interest"), which was provided by counsel for the Debtor. FBR compared this list to a list of FBR's clients. For each client on FBR's list that also appeared on the list provided by the Debtor's counsel, and which FBR represented within the last three (3) years, FBR reviewed the client's relationship to FBR. Based on such review, and after due inquiry, FBR represents that, as to each such client, FBR does not hold or represent an interest that is adverse to the Debtor's estate, and that FBR is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

13.     FBR has, within the last three (3) years, had a connection with, provided services for, or currently provides services for the entities described below (or their affiliates), in

matters totally unrelated to the Debtor. FBR may represent these entities (or their affiliates) in the future, subject however, to the limitations of paragraph 11 above.

| Company/Organization | FBR Relationship |
|---|---|
| Silverton Bank | Historic relationship in investment banking and advisory work |
| StoneCastle Partners | Institutional client |
| Columbia Management (Bank of America) | Institutional client |
| Wilmington Trust Company | Institutional client |

14.    None of the services that FBR currently provides to the Potential Parties in Interest listed in paragraph 13, regardless of the size or significance of the client involved, would compromise in any way FBR's ability to provide the services to the Debtor outlined in the Application to which this Affidavit relates, nor will FBR agree at any point in the future to provide services to any party that could compromise its ability to serve the Debtor in this matter.

## PROFESSIONAL COMPENSATION

15.    The compensation proposed to be paid to FBR pursuant to the Agreement upon consummation of the Offering is FBR's standard fee for work of this nature. This fee is reasonable, fair and appropriately reflects the nature and scope of the services that have been, are being and are to be provided by FBR; the fees paid to other leading investment banks acting as placement agents; the market rates charged for comparable services; and FBR's substantial experience with respect to the matters on which it is being retained.

16.    No promises have been received by FBR as to payment or compensation in connection with this Chapter 11 case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. FBR has no agreement with any other entity to share with such entity any compensation received by FBR.

17.     The foregoing constitutes the statement of FBR in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

Dated:  August 9, 2010

*Brian Taylor*

Brian Taylor

SWORN TO AND SUBSCRIBED before
me this 9th day of August 2010.

*Tracy Ann Silletto*

Notary Public

TRACY A. SILLETTO
Notary Public, State of New York
No. 01MA5049078
Qualified in Richmond County
Commission Expires Sept. 5, 2013

**Exhibit 1 (Agreement)**

July 16, 2010

Greg Lee
Chairman/CEO
Nexity Financial Corporation
3680 Grandview Parkway, Suite 200
Birmingham, Alabama 35243

Re: Amended Engagement Letter

Dear Mr. Lee:

We refer you to the letter agreement dated as of March 16, 2010 between Nexity Financial Corporation ("Nexity") and FBR Capital Markets & Co. ("FBRC") (the "Agreement"). We, you and Nexity Bank of Birmingham, Alabama agree that this amendment to the Agreement (the "Amended Agreement") shall replace and supersede the Agreement, unless otherwise expressly set forth herein.

FBRC would be pleased to act as exclusive financial restructuring advisor and exclusive initial purchaser and/or placement agent for Nexity and its wholly-owned subsidiaries (collectively referred to as the "Company") in connection with a possible restructuring of the Company's businesses and/or certain liabilities of the Company and the proposed offering described below, subject to the terms and conditions of this Amended Agreement.

## 1. The Offering.

(a)     During the Offering Engagement Period (as defined in Section 9, below), FBRC will be the exclusive placement agent and/or initial purchaser with respect to the proposed offering of equity securities (the "Securities") of Nexity (the "Offering"). The actual terms of the Offering will depend on the outcome of FBRC's due diligence investigation and market conditions, and will be subject to negotiation between the Company and FBRC.

(b)     FBRC intends to conduct the Offering as a Rule 144A/Regulation S offering and/or Section 4(2)/Regulation D private placement, only after execution of a purchase agreement between Nexity and FBRC (in the case of a Rule 144A/Regulation S offering) or purchase agreements between Nexity and the investors (in the case of a Section 4(2)/Regulation D private placement), which will include customary representations and warranties, covenants, conditions, termination provisions and indemnification, contribution and limitation of liability, all of which must be satisfactory to FBRC and the Company, each in its sole discretion. FBRC's willingness to execute a purchase agreement and conduct the Offering will be subject to its satisfaction, in its sole discretion and judgment, with market conditions and the results of its due diligence investigation of the Company and its business. The Company would also enter into a registration rights agreement, for the benefit of investors in the Offering, pursuant to which the Company would use its best efforts to cause the Securities sold or placed in the Offering to be registered with the Securities and Exchange Commission (the "SEC"). The registration rights agreement would contain customary terms and conditions and provide for customary opinions, comfort letters and dated documents.

(c)     During the Offering Engagement Period, the Company will not offer any Securities for sale to, or solicit any offers to buy Securities from, any person or persons, whether directly or indirectly, otherwise than through FBRC, other than any sale to or solicitation from any officer, director, employee or shareholder of the Company and other persons listed on Appendix I, attached hereto.

**2.     *The Restructuring.*** During the period prior to the commencement by Nexity of any case under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), FBRC will be the exclusive financial restructuring advisor to the Company in connection with a possible restructuring of certain liabilities of the Company and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring pursuant to the terms and conditions of this Amended Agreement. As used in this Amended Agreement, the term Restructuring shall mean, collectively, (a) any restructuring, reorganization, and/or recapitalization of the Company (whether or not pursuant to Chapter 11 of the Bankruptcy Code), (b) any repurchase, refinancing, extension or repayment by the Company of a substantial amount of its debt obligations and/or (c) any sale of all or substantially all of the Company.

**3.     *Services to be Rendered.***

(a)     In connection with the Offering and the Restructuring, FBRC will perform the following services:

      (i)   Reviewing proposed transactions and transaction structures;

      (ii)  Assisting the Company in the Company's determination of an appropriate transaction structure;

      (iii) Assisting in evaluation of the Company's businesses and prospects, including as it pertains to the Company's strategic review process;

      (iv)  Assisting in the development of the Company's long-term business plan and related financial projects;

      (v)   Assisting in the development of financial data and presentations to the Company's Board of Directors, management, various creditors and other third parties;

      (vi)  Analyzing the Company's financial liquidity and evaluating alternatives to improve such liquidity;

      (vii) Analyzing various restructuring scenarios and the potential impact of these scenarios on the recoveries of various stakeholders;

      (viii) Providing strategic advice with regard to restructuring or refinancing the Company's obligations;

      (ix)  Evaluating the Company's debt capacity and alternative capital structures;

(x) Participating in negotiations among the Company and its creditors and other interested parties;

(xi) Conducting an examination of documents and records pertaining to the Company, interviewing Company personnel and making such other reasonable investigations as FBRC deems necessary and appropriate under the circumstances;

(xii) Identifying, meeting with and soliciting potential investors for the Offering;

(xiii) Organizing, participating in and facilitating meetings between potential investors and the Company, including due diligence meetings;

(xiv) Participating in the preparation of a private placement memorandum or offering memorandum for the Offering and related documents, including presentations to potential investors;

(xv) Advising the Company in connection with the pricing of the Securities to be sold in the Offering;

(xvi) Organizing, participating in and facilitating the closing of the Offering;

(xvii) As requested by the Company, providing periodic status reports and updates to regulatory authorities regarding the Offering; and

(xviii) Performing financial analysis of the Company and comparisons with other companies in its industry.

(b) In performing its services pursuant to this Amended Agreement, and notwithstanding anything to the contrary herein, FBRC is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) the Offering or the Restructuring (each a "Transaction") or Other Transaction (as defined in Section 4, below) and acknowledges that the Company has the right to reject any and all offers to enter into any potential Transaction or Other Transaction for any reason whatsoever in the Company's absolute discretion. FBRC shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

## 4. *Other Advisory Services and Offerings.*

(a) The Company agrees that at least 15 days prior to contacting any other investment banking firm, broker dealer or financial or restructuring advisory firm, and subject to the terms set forth herein, it will inform FBRC about any such contact and it also grants FBRC a right of first refusal to act in the following capacities in any of the following transactions entered into or contemplated by the Company (each, an "Other Transaction"):

(i) <u>Mergers and Acquisitions:</u>  Exclusive financial advisor in connection with any purchase or sale of assets or stock, merger, acquisition, business combination, joint venture or other strategic transaction, where an investment banker represents the Company, in each case other than in connection with the Restructuring;

(ii) <u>Capital Raising:</u>  Lead underwriter  and sole book-runner in connection with any subsequent public offering of equity or debt securities or other capital markets financing, with FBRC's name on the cover of any public offering prospectus in the upper left relative to the names of the other underwriters participating in the transaction; and sole placement agent in any private offering of equity or debt securities or other capital markets financing, in each case other than in connection with the Restructuring;

(iii) <u>Warrant Exercise Programs:</u>  Agent in connection with the exercise of warrants or options in the Company, in each case other than in connection with the Restructuring; and

(iv) <u>Self-Tenders:</u>  Dealer manager with respect to any self-tender offer by the Company, except in connection with the self tender of existing TRUPs and debt of the Company, in each case other than in connection with the Restructuring.

(b)  The obligations of the Company set forth in this Section 4 shall be for the Offering Engagement Period and, subject to the completion of the Offering during the Offering Engagement Period, for a further period of two (2) years from the date of completion of the Offering (the "Post-Offering Period").

**5.  *Information to Be Supplied; Confidentiality.***

(a)  In connection with FBRC's activities on behalf of the Company, the Company will furnish FBRC with all financial and other information regarding the Company that FBRC reasonably believes appropriate to its assignment (all such information so furnished by the Company, whether furnished before or after the date of this Amended Agreement, being referred to herein as the "Information"). The Company will provide FBRC with reasonable access to the officers, directors, employees, independent accountants, legal counsel and other advisors and consultants for the Company. The Company recognizes and agrees that FBRC (i) will use and rely primarily on the Information and information available from generally recognized public sources in performing the services contemplated by this Amended Agreement without independently verifying the Information or such other information, (ii) does not assume responsibility for the accuracy of the Information or such other information and (iii) will not make an appraisal of any assets or liabilities owned or controlled by the Company or its market competitors. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify FBRC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to FBRC.

(b)  The Company acknowledges that in the course of this engagement it may be necessary for FBRC and the Company to communicate electronically. The Company further acknowledges that although FBRC will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or

error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that FBRC shall have no liability to the Company with respect to any unauthorized access, misuse or alteration of such information, error or omission arising from or in connection with:

      (i)  the electronic communication of information to the Company;

      (ii)  the Company's electronic storage of FBRC's information; or

      (iii) the Company's reliance on such information.

(c)      FBRC will maintain the confidentiality of the Information and, unless and until such information shall have been made publicly available by the Company or by others without breach of a confidentiality agreement, shall disclose the Information only as authorized in writing by the Company or as required by law, rule or regulation, including NASD Rule 2711, or by order of a governmental authority or court of competent jurisdiction. In the event that FBRC is legally required to make disclosure of any of the Information, FBRC will give written notice to the Company prior to such disclosure, to the extent that FBRC can practically do so.

(d)      The foregoing section shall not apply to information that:

      (i)  at the time of disclosure by the Company to FBRC is, or thereafter becomes, generally available to the public or within the industries in which the Company or FBRC or its affiliates conduct business, other than as a result of a breach by FBRC of its obligations under this Amended Agreement;

      (ii)  prior to or at the time of disclosure by the Company to FBRC, was already in the possession of, FBRC or any of its affiliates, or developed by them from information then in their possession, by the application of other information or techniques in their possession, generally available to the public, or available to FBRC or its affiliates other than from the Company;

      (iii) at the time of disclosure by the Company to FBRC or thereafter, is obtained by FBRC or one of its affiliates from a third party whom FBRC reasonably believes to be in possession of the Information not in violation of any contractual, legal or fiduciary obligation to the Company with respect to that information; or

      (iv) is independently developed by FBRC or its affiliates, but not including the confidential information provided to FBRC by the Company.

(e)      Nothing in this Amended Agreement shall be construed to limit the ability of FBRC or its affiliates to pursue, investigate, analyze, invest in, or engage in investment banking, financial restructuring advisory or any other business relationships with, entities other than the Company, notwithstanding that such entities may be engaged in a business which is similar to or competitive with the business of the Company, and notwithstanding that such entities may have actual or potential operations, products, services, plans, ideas, customers or supplies similar or identical to the Company's, or may have been identified by the Company as potential merger or acquisition targets or potential candidates for some other business combination, cooperation or relationship.

(f)     The Company acknowledges that all advice (written or oral) given by FBRC to the Company is intended solely for the benefit and use of the Company and shall not be relied upon by any other person.  Other than to the extent required to be reflected in Board of Directors and committee meeting minutes, no advice (written or oral) of FBRC hereunder shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, nor shall any public references to FBRC be made by the Company (or such persons), without the prior written consent of FBRC.

(g)     The Company hereby authorizes FBRC to transmit to the prospective purchasers of the Securities, upon its completion, a Private Placement Memorandum or Offering Memorandum with attached exhibits and such supplements as may from time to time be prepared by the Company (collectively the "Memorandum").  The Company represents and warrants that the Memorandum (i) will be prepared by the management of the Company; (ii) will be reviewed and approved by the management and the Board of Directors of the Company; and (iii) as of the date of the Memorandum, will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein or previously made, in light of the circumstances under which they were made, not misleading.  The Company will advise FBRC immediately of the occurrence of any event or any other change known to the Company which results in the Memorandum containing an untrue statement of a material fact or omitting to state a material fact required to be stated therein or necessary to make the statements therein or previously made, in light of the circumstances under which they were made, not misleading.

**6.     _Fees and Expenses._**

(a)     Pursuant to the Agreement, Nexity has paid to FBRC a non-refundable retainer (the "Retainer") of $100,000.

(b)     Concurrently with the consummation of the Offering, the Company shall pay in cash to FBRC a fee (the "Offering Fee") equal to 7.0% of the gross proceeds received from the sale of the Securities, which Fee is to be paid by means of a discount from the offering price to purchasers in the Offering or, at FBRC's option, as a cash fee at closing, except that no fee shall be payable to FBRC on up to 9.9% of the gross proceeds to the extent such proceeds are received from the sale of Securities to any entity listed on Appendix I.  FBRC agrees that the Offering Fee is contingent on the closing of the purchase and sale of Securities pursuant to the Offering and the Company will not be obligated to pay the Offering Fee unless the sale of such Securities is consummated.

(c)     Concurrently with the consummation of the Offering, the Company shall pay in cash to FBRC a fee (the "Restructuring Fee") of $300,000 on account of FBRC's financial restructuring advisory services provided during the period prior to the commencement by Nexity of any case under the Bankruptcy Code (a "Bankruptcy Case").

(d)     In addition to the Offering Fee and the Restructuring Fee payable to FBRC under this Amended Agreement, the Company agrees to reimburse FBRC upon request for its reasonable and actual out-of-pocket expenses incurred in connection with its services under this Amended Agreement, whether or not the Offering or Restructuring is consummated, including the fees and disbursements of Davis Polk & Wardwell LLP, FBRC's legal counsel.

(e)     The Company acknowledges and agrees that it will be responsible for and shall pay all costs and expenses incident to the purchase, sale and delivery of Securities in the Offering,

including, without limitation, all fees and expenses of filing with the SEC and the NASD; all Blue Sky fees and expenses; fees and disbursements of counsel and accountants for the Company; printing costs; and reasonable costs and expenses of FBRC and Company personnel, including, but not limited to, commercial or charter air travel and local hotel accommodations and transportation. However, without prior approval of the Company, FBRC personnel will fly on normally scheduled commercial airlines, will not purchase first class air travel unless such flight is greater than 3 hours in duration and will stay at customary and usual business class hotels and related national hotel chains (such as Marriott, Hilton and Sheraton).

(f)     Prior to commencing a Bankruptcy Case, the Company shall pay all invoiced amounts to FBRC in immediately available funds by wire transfer.

(g)     Should FBRC represent the Company in a future transaction, FBRC's compensation in connection with any Other Transaction shall be determined by agreement between the Company and FBRC on the basis of compensation customarily paid to leading investment banks acting as financial or restructuring advisors, underwriters or placement agents in similar transactions and under similar circumstances.

**7.     _Indemnification, Contribution, and Limitation of Liability._** The Company agrees to indemnify FBRC and its controlling persons, representatives and agents in accordance with the indemnification provisions set forth in Appendix II, which is incorporated herein by reference, and agrees to the other provisions of Appendix II, regardless of whether the proposed Offering or Restructuring is consummated.

**8.     _Assumption of the Amended Agreement._** In the event a Bankruptcy Case is commenced, the Company shall seek to assume the Amended Agreement pursuant to a plan of reorganization, and shall use its reasonable best efforts to obtain an order confirming such plan of reorganization. The Company shall supply FBRC and its counsel with a draft of any proposed plan of reorganization, including, without limitation, any related disclosure statement, plan supplement, proposed order confirming the plan of reorganization and exhibits thereto sufficiently in advance of the filing of such documents to enable FBRC and its counsel to review and comment thereon. In the event a Bankruptcy Case is commenced, FBRC shall have no obligation to provide any services under this Amended Agreement unless the Amended Agreement is assumed in the manner set forth above pursuant to a final order of the bankruptcy court having jurisdiction over the Bankruptcy Case (the "Bankruptcy Court"), not subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to FBRC.

**9.     _Term of Offering Engagement Period; Survival of Provisions._**

(a)     The term of FBRC's engagement with respect to the Offering (the "Offering Engagement Period") shall be for 12 months commencing on the date of execution of the Agreement; provided, however, that either party may terminate the Offering Engagement Period at any time upon ten (10) days written notice to the other party.

(b)     This Amended Agreement and the Appendices shall survive any termination of the Offering Engagement Period. With respect to the expenses payable by the Company pursuant to Section 6, upon termination of the Offering Engagement Period, FBRC shall be entitled to collect all such actual expenses accrued through the date of termination in accordance with the terms of Section 6. In the event that the Company terminates the Offering Engagement Period, the Company acknowledges and agrees that FBRC will be entitled to compensation for its financial and

restructuring advisory services pursuant to this Amended Agreement and its other efforts on behalf of the Company, which services and efforts have value to the Company independent of the Offering. The amount of such compensation shall be $1,000,000 (the "Termination Fee"). In no event shall any fee be paid under this Amended Agreement in an FDIC-assisted transaction.

(c)     During the Offering Engagement Period, the Company will not solicit or negotiate with any other person to act as financial or restructuring advisor, underwriter, or placement agent or to provide other investment banking services to the Company. FBRC acknowledges that the Company, and its Board of Directors, has retained the services of other financial advisors including, but not limited to, Morgan Keegan Company, Tucker Midis and Associates, LLC, FinPro, Inc. and Grant Thorton and that such retentions are not a breach of this agreement.

(d)     The Company acknowledges that the efforts of FBRC in performing the services described herein will be of substantial assistance to the Company in enabling it to access the capital markets. Therefore, if (i) the Offering is not consummated during the Offering Engagement Period, for reasons other than the termination of the Offering Engagement Period by FBRC pursuant to Section 9(a), and the Company completes a similar offering of its securities in lieu of the Offering during the Offering Engagement Period, (ii) any person introduced to the Company by FBRC during the Offering Engagement Period purchases securities from the Company, during the 18 month period following the termination of the Offering Engagement Period, or (iii) the Company completes any Other Transaction during the Offering Engagement Period or during the 18 month period following the termination of the Offering Engagement Period, the Company shall pay FBRC upon the closing of such transaction, a cash fee in consideration of FBRC's efforts in the amounts set forth in  Section 6(b) of this Amended Agreement with respect to any offering of equity securities, and Section 6(f) with respect to any other type of transaction.

**10.     _Administrative Expense Priority._**  In a Bankruptcy Case of the Company or any of its direct or indirect subsidiaries, affiliates, partnerships, other similar entities with which it has joint operating arrangements or any combination thereof, the Company agrees that FBRC's postpetition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Amended Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(I)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly FBRC the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its reasonable best efforts to ensure that any cash collateral order, DIP financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of FBRC's fees and expenses contemplated hereby.

**11.     _Survival, Successors & Assigns._**  Sections 6 through 11 hereof, inclusive, including the provisions set forth in Appendix II, shall survive the termination or expiration of this Amended Agreement. The benefits of this Amended Agreement and the indemnification and other obligations of the Company to FBRC and certain related persons contained in Appendix II shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Amended Agreement and Appendix II by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use its reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

**12.    Corporate Governance.**  The Company will use its commercially reasonable best efforts to comply with NYSE or Nasdaq listing requirements relating to corporate governance as they exist at the time of the Offering and thereafter.  The Company acknowledges that in order to successfully consummate the Offering it will need to retain new Directors and reconstitute the Board of Directors and its committees, and the Company agrees that it will solicit the input of FBRC to ensure that such reconstituted Board of Directors and committees will facilitate the successful consummation of the Offering and permit sufficient disclosure to potential investors, it being understood and agreed that the retention of any new Directors will be subject to regulatory approval.  It is anticipated that the Company's Board of Directors will be reconstituted prior to, or concurrently with, consummation of the Offering.

**13.    Independent Contractor; No Fiduciary Duty.**  The Company acknowledges and agrees that it is a sophisticated business enterprise and that FBRC has been retained pursuant to this Amended Agreement to act as initial purchaser and/or placement agent in connection with the Offering and exclusive financial and restructuring advisor to the Company solely with respect to the matters set forth herein.  In such capacity, FBRC shall act as an independent contractor, and any duties of FBRC arising out of its engagement pursuant to this Amended Agreement shall be contractual in nature and shall be owed solely to the Company.  Each party disclaims any intention to impose any fiduciary duty on the other.  The Company acknowledges that it will not rely on FBRC for legal or tax advice.

**14.    Beneficiaries.**  This Amended Agreement shall inure to the sole and exclusive benefit of FBRC and the Company and the persons referred to in Appendix II and their respective successors and representatives.  The obligations and liabilities under this Amended Agreement shall be binding upon FBRC and the Company.

**15.    Governing Law.**  This Amended Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed and to be wholly performed therein without giving effect to its conflicts of laws principles or rules.  Any dispute hereunder shall be brought in a federal or state court in the Southern District of New York.

**16.    Amendments.**  This Amended Agreement may be modified or amended, or its provisions waived, only by a writing signed by the party against whom enforcement of the modification, amendment or waiver is sought.

**17.    Announcements of Offering and Other Transactions.**  If any Transaction or Other Transaction is consummated in which FBRC acts as underwriter or otherwise, FBRC may, at its option and expense and subject to the prior written reasonable consent of the Company, which shall not be unreasonably withheld, place an announcement in such newspapers and periodicals as FBRC may choose stating that FBRC has so acted, and the capacity in which it has acted.  In addition, the Company further consents to FBRC's public use or display of the Company's logos, symbols and/or trademarks as part of FBRC's general marketing or promotional activities, provided that any such use or display is in the nature of a public record or tombstone announcement in relation to any Transaction or Other Transaction.

**18.    No Commitment.**  This Amended Agreement does not and will not constitute any agreement, commitment or undertaking, express or implied on the part of FBRC or any affiliate to purchase or to sell any securities or to provide any financing and does not ensure the successful arrangement or completion of any Transaction or any Other Transaction.

**19.**     *Entire Agreement.*     This Amended Agreement constitutes the entire Amended Agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof, including, but not limited to, the Agreement.

**20.**     *Severability.*     If any portion of this Amended Agreement shall be held or made unenforceable or invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Amended Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of the Amended Agreement shall be severable.

**21.**     *Headings.*     The descriptive headings of the sections, subsections and Appendices of this Amended Agreement are inserted for convenience only, do not constitute a part of this Amended Agreement and shall not affect in any way the meaning or interpretations of this Amended Agreement.

**22.**     *Failure or Delay No Waiver.*     It is understood and agreed that failure or delay by either the Company or FBRC in exercising any right, power or privilege hereunder shall not operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege hereunder.

**23.**     *Waiver of Trial by Jury.* **EACH OF FBRC AND THE COMPANY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS AMENDED AGREEMENT.**

[Remainder of this page intentionally left blank]

If the foregoing terms correctly set forth our agreement, please sign and return to us a duplicate copy of this Amended Agreement. We look forward to working with you toward the successful conclusion of this engagement and developing a long term relationship with the Company.

Very truly yours,

FBR CAPITAL MARKETS & CO.

By: _____

Name: Kenneth Slosser

Title: Senior Managing Director

Confirmed and accepted as of this ___20___ day of _
_May_, 2010:

NEXITY FINANCIAL CORPORATION

By: _____

Name: GREG LEE

Title: Chairman/CEO

Confirmed and accepted as of this ___20___ day of _
_July_, 2010

NEXITY BANK OF BIRMINGHAM, ALABAMA

By: _____

Name: GREG LEE

Title: Chairman/CEO

Confirmed and accepted as of this ___20___ day of _
_July_, 2010

11

**APPENDIX I**

**Meriturn Partners, LLC and its officers, directors, employees, investors and co-investors**

**Archway Equity Partners and its officers, directors, employees, investors and co-investors**

# APPENDIX II

The Company agrees to indemnify and hold harmless FBRC and its affiliates (as defined in Rule 405 under the Securities Act of 1933, as amended) and their respective directors, officers, employees, agents, controlling persons and advisors, including legal advisors (FBRC and each such person being an "Indemnified Party") from and against all losses, claims, damages and liabilities (or actions, including shareholder actions, in respect thereof), joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, which are related to or result from the performance by FBRC or any other Indemnified Party of the services contemplated by or the engagement of FBRC pursuant to, this Amended Agreement and will promptly reimburse any Indemnified Party for all reasonable out-of-pocket expenses (including reasonable out-of-pocket counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by the Company. The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions, (i) for any settlement by an Indemnified Party effected without its prior written consent (not to be unreasonably withheld); or (ii) to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from an Indemnified Party's willful misconduct or gross negligence or bad faith. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of FBRC pursuant to, or the performance by FBRC or any other Indemnified Party of the services contemplated by, this Amended Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from FBRC's or, as applicable, such Indemnified Party's willful misconduct or gross negligence or bad faith.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, promptly notify the Company in writing of the same. The Company may elect to assume the defense of any such action, suit or proceeding thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action provided, that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Company, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or that a conflict or potential conflict exists (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Indemnifying Party to conduct the defense of both the Company and the Indemnified Party (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party as to such matters), or (iii) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases the reasonable out-of-pocket fees, disbursements and other charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be required to pay fees and expenses for more than one firm of attorneys representing Indemnified Parties unless a single firm of attorneys is ethically prevented from representing all Indemnified Parties. Any failure or delay by an Indemnified Party to give the notice referred to in this section shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Company, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party.

If the indemnification provided for in this Amended Agreement is for any reason held to be unenforceable (other than on account of the willful misconduct, gross negligence, or bad faith of the relevant Indemnified Party), the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and the Indemnified Parties on the other hand, of the Offering or Restructuring (or Other Transaction) as contemplated, whether or not the Offering or Restructuring (or Other Transaction) is consummated, or (ii) if (but only if) the allocation provided for in clause (i) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand and FBRC, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this section the relative benefits to the Company and FBRC of the Offering or Restructuring (or Other Transaction) as contemplated shall be deemed to be in the same proportion that the total value received or contemplated to be received by the Company or its shareholders, as the case may be, as a result of or in connection with the Offering or Restructuring (or Other Transaction) bear to the fees paid or to be paid to FBRC under this Amended Agreement. Notwithstanding the foregoing, the Company expressly agrees that FBRC shall not be required to contribute any amount in excess of the amount by which fees paid FBRC hereunder (excluding reimbursable expenses), exceeds the amount of any damages which FBRC has otherwise been required to pay.

The Company agrees that without the relevant Indemnified Party's prior written consent, which shall not be unreasonably withheld, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provisions of this Amended Agreement (in which FBRC or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding.

In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Party is not named as a defendant, the Company agrees to promptly reimburse FBRC on a monthly basis for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

Confirmed and Agreed to:

_____

(Signature on behalf of Nexity Financial Corporation)

7/20/10

(Date)

_____

(Signature on behalf of Nexity Bank of Birmingham, Alabama)

7/20/10

(Date)

14