IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re                                    :    Chapter 11
                                         :
NEXITY FINANCIAL CORPORATION,[1]         :    Case No. 10-12293 (KJC)
                                         :
                    Debtor.              :    Obj. Deadline: June 22, 2011 at 4:00 p.m. (EDT)
                                         :    Hearing Date: June 29, 2011 at 2:30 p.m. (EDT)
------------------------------------------------------------x

## MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR AN ORDER APPROVING THE STIPULATION BETWEEN THE DEBTOR AND THE FDIC REGARDING ALLOWANCE OF THE FDIC'S CAPITAL MAINTENANCE CLAIM

Nexity Financial Corporation, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") hereby submits this motion (the "Motion") for an order, pursuant to sections 105(a) and 365(o) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the stipulation attached hereto as Exhibit A, between the Debtor and the Federal Deposit Insurance Corporation, in its corporate capacity (the "FDIC"), and the Federal Deposit Insurance Corporation, in its capacity as receiver for Nexity Bank (the "FDIC-R" and collectively with the Debtor and the FDIC, the "Parties"), allowing the FDIC's capital maintenance claim (the "Stipulation"). In support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court

---

[1] The last four (4) digits of the Debtor's federal identification number are 2937. The Debtor's principal place of business is located at 3680 Grandview Parkway, Suite 200, Birmingham, Alabama 35243.

pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

1. On July 22, 2010 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

3. The Debtor was the holding company for Nexity Bank. As such, the Debtor is regulated by the Federal Reserve Board as a bank holding company under the Bank Holding Company Act of 1956. Nexity Bank was headquartered in Birmingham, Alabama with additional correspondent banking offices in Atlanta, Georgia; Myrtle Beach and Columbia, South Carolina; Dallas, Texas; Orlando, Florida; Milwaukee, Wisconsin; and Charlotte and Raleigh, North Carolina.

4. Nexity Bank was an Alabama state-chartered bank that is not a member of the Federal Reserve System. Its primary regulators were the FDIC and the Alabama State Banking Department (the "Alabama Banking Department"). Nexity Bank conducted deposit business in all 50 states in the United States and conducted loan business primarily in the southeastern United States and Texas.

5. On July 22, 2010, the Debtor's filed the First Amended Prepackaged Plan of

Reorganization of Nexity Financial Corporation Under Chapter 11 of the Bankruptcy Code [Docket No. 7] (the "Prepackaged Plan") and Disclosure Statement Relating to the Prepackaged Plan of Reorganization of Nexity Financial Corporation Under Chapter 11 of the Bankruptcy Code [Docket No. 8] (the "Disclosure Statement"). The Prepackaged Plan was accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code. A combined hearing to consider (i) approval of the Disclosure Statement, (ii) the prepetition solicitation of votes on the Prepackaged Plan and (iii) confirmation of the Prepackaged Plan was originally scheduled for August 27, 2010 and has been adjourned from time to time to accommodate the difficulties experienced in connection with the NFC Stock Offering (as defined herein).

6. The Prepackaged Plan was predicated on the offering of up to 800 million shares of the Debtor's common stock on a private placement basis (the "NFC Stock Offering"), exempt from the registration requirements of the Securities Act of 1933, as amended. The NFC Stock Offering and the other restructuring transactions contemplated in the Prepackaged Plan were part of an overall effort to deleverage the Debtor and provide necessary additional working capital to Nexity Bank. Pursuant to the NFC Stock Offering, the Debtor sought to raise at least $175 million in new capital that would be used to make the distributions contemplated under the Prepackaged Plan, pay the costs and expenses associated with the Chapter 11 Case and the transactions related to the recapitalization, support the Debtor's ongoing working capital needs and contribute the urgently needed capital to the Debtor and Nexity Bank.

7. Notwithstanding months of discussions with and conducted due diligence by prospective investors, the Debtor has been unable to raise the $175 million in new capital through the NFC Stock Offering necessary to consummate the Prepackaged Plan. Accordingly,

on April 15, 2011, the Alabama Banking Department closed Nexity Bank for failing to address its capital impairment issues within the timeframe required by the superintendent of the Alabama Banking Department. The Alabama Banking Department appointed the FDIC-R as the receiver. To protect the depositors of Nexity Bank, the FDIC-R entered into a purchase and assumption agreement with AloStar Bank of Commerce, Birmingham, Alabama, a newly-chartered bank, to assume substantially all of the deposits of Nexity Bank. The sole branch of Nexity Bank reopened on April 18, 2011 as a branch of AloStar Bank of Commerce.

8. Given the failure of Nexity Bank, the Prepackaged Plan is no longer feasible. Accordingly, contemporaneously with the filing of this Motion, the Debtors have filed a motion seeking to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (the "Conversion Motion").

## SPECIFIC BACKGROUND

### A. The Capital Restoration Plan

9. On January 21, 2010, Nexity Bank received a Prompt Corrective Action notification letter from the FDIC, which, among other things, notified the Bank that it was "significantly undercapitalized" pursuant to Section 38 of the Federal Deposit Insurance Act (the "FDI Act") and required Nexity Bank to file a written capital restoration plan (the "Capital Restoration Plan") by March 7, 2010. In accordance with the Prompt Corrective Action notification letter, Nexity Bank submitted its Capital Restoration Plan to the FDIC, the Alabama Banking Department and the Federal Reserve Bank of Atlanta on March 5, 2010, wherein Nexity Bank proposed various mechanisms to restore the capital of Nexity Bank to levels required by federal and state regulators.

B.  **The Guaranty**

10. On March 16, 2010, Nexity Bank was notified of certain deficiencies in the Capital Restoration Plan, including the omission of a guarantee by the Debtor as required by Section 38(e)(2)(C)(ii) of the FDI Act. Accordingly, on or about March 24, 2010, the Debtor executed, in accordance with Section 38(e)(2)(C)(ii) of the FDI Act, a guaranty of Nexity Bank's Capital Restoration Plan to the FDIC and the Alabama Banking Department (the "Guaranty").

11. By the Guaranty, the Debtor, among other things, "unconditionally and irrevocably guarantees the performance of [Nexity] Bank, under the terms of the Capital Plan." Moreover, the Debtor agreed that upon the Bank's failure to comply with its Capital Restoration Plan, the Debtor "shall pay to [Nexity] Bank, or its successors or assigns, the amount necessary to bring [Nexity] Bank into compliance with the Capital Plan; provided, that the aggregate liability of the [Debtor] under this performance Guaranty shall be the lesser of an amount equal to five percent (5%) of Nexity Bank's total assets at the time [Nexity] Bank was notified that it was undercapitalized or the amount necessary to restore the relevant capital measures of [Nexity] Bank to the levels required to be 'adequately capitalized' as those measures and levels are defined at the time that [Nexity] Bank initially fails to comply with its approved Capital Plan."

12. The Debtor also acknowledged in the Guaranty that the "Guaranty is a binding and enforceable contractual commitment for the benefit of [Nexity] Bank and FDIC as insurer of the Deposit Insurance Fund," that the FDIC and the FDIC-R, jointly or separately, have standing to enforce the provisions of the Guaranty through legal action or otherwise, and that the "Guaranty shall survive the failure of [Nexity] Bank and shall continue as a binding contractual commitment of the [Debtor], its successors and assigns."

## C. The Capital Maintenance Claim and the Stipulation

13. In anticipation of the Court confirming the Prepackaged Plan, the Debtors and the FDIC negotiated language for inclusion in any confirmation order that would have preserved the FDIC's claim against the Debtor under the Guaranty (the "Capital Maintenance Claim") pursuant to section 365(o) of the Bankruptcy Code. If the Prepackaged Plan had been consummated, the new capital raised through the NFC Stock Offering would have been used to satisfy Nexity Bank's obligations under the Capital Restoration Plan (thereby eliminating any claim that the FDIC would have had against the Debtor under the Guaranty). Given the closure of Nexity Bank and the Debtor's inability to consummate the Prepackaged Plan, the Parties have entered into the Stipulation to fix the amount of the Capital Maintenance Claim under section 365(o) of the Bankruptcy Claim and provide for the partial payment of such claim, with the remaining portion of the Capital Maintenance Claim being treated as an unsecured priority claim under section 507(a)(9) of the Bankruptcy Code.

14. According to the Guaranty, the aggregate liability shall be the lesser of: (a) an amount equal to five percent of Nexity Bank's total assets at the time it was notified it was undercapitalized; or (b) the amount necessary to restore the relevant capital measures of Nexity Bank to the levels required to be "adequately capitalized" at the time that Nexity Bank initially fails to comply with the Capital Restoration Plan. Nexity Bank was notified that it was undercapitalized as of December 31, 2009 -- at which time, five percent of its total assets equaled $48,291,000. Nexity Bank was notified that it was not in compliance with the Capital Restoration Plan as of August 17, 2010. According to the financial information set forth in Nexity Bank's Consolidated Report of Condition and Income ("Call Report") dated June 30, 2010 and submitted in accordance with the regulations set forth by the Federal Financial

6

RLF1 4021985v. 1

Institutions Examination Council, Nexity Bank reported Tier One Capital of $24,061,000 and Total Risk-Based Capital of $32,467,000. To increase the ratios to 4% and 6% respectively, the levels required to be considered adequately capitalized, Tier One Capital would need to increase to $37,621,000, or by $13,560,000, and Total Risk-Based Capital would have to increase to $44,185,000, or by $11,718,000. Therefore, under the express provisions of the Guaranty, the amount of the Capital Maintenance Claim is $13,560,000.

15. By the Stipulation, the Debtor has acknowledged that the Capital Maintenance Claim, in favor of the FDIC and the FDIC-R (jointly or separately), is a valid and an allowed claim against the Debtor pursuant to section 365(o) of the Bankruptcy Code. To partially cure the Capital Maintenance Claim, the FDIC-R has agreed to accept, for the benefit of Nexity Bank, a payment of $500,000 (to be paid within 5 days following the entry of an order approving the Stipulation). The remaining amount of the Capital Maintenance Claim shall be treated as an unsecured priority claim against the Debtor under section 507(a)(9) of the Bankruptcy Code. The proposed Stipulation provides for a partial payment of the Capital Maintenance Claim, while maintaining sufficient funds in the Debtor's account to pay chapter 11 administrative claims and support an orderly wind-down by a chapter 7 trustee.

### RELIEF REQUESTED AND BASIS FOR RELIEF

16. By this Motion, the Debtor respectfully requests the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Stipulation.

17. Section 105 of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement agreement and provides, in relevant part, that

7

"[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Together, section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) empower a bankruptcy court to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors." See In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997); Vaughn v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); In re Texaco, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988). Indeed, "compromises are favored in bankruptcy" because they minimize the costs of litigation and further the parties' interest in expediting administration of a bankruptcy estate. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3rd Cir. 1996), (citing Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).

18. A court should approve a settlement agreement, provided it not "fall beneath the lowest point in the range of reasonableness." In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004) (quoting Official Unsecured Creditors' Comm. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines), 150 B.R. 595, 598 (E.D. Pa. 1992)); In re Drexel Burnham, 134 B.R. at 5050. The following factors should be utilized by a Court in the determination of whether a settlement is within a range of reasonableness:

1) the probability of success in the litigation;

2) difficulties to be encountered in collection

3) the complexity of the litigation and related expense, inconvenience, and delay; and

4) the interests of the creditors.

Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3rd Cir. 2002); In re Etoys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005); In re Coram Healthcare Corp., 315 B.R. at 330-31; see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The Debtors submit that the proposed settlement is in the best interests of the Debtor's estate and falls squarely within the range of reasonableness for purposes of evaluating compromises in bankruptcy.

19. Section 365(o) of the Bankruptcy Code requires that Debtors cure any existing defaults under any commitment by the debtor to a Federal depository institutions' regulatory agency to maintain the capital of an insured depository institution. 11 U.S.C. § 365(o). Moreover, section 365(o) also provides that any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507 of the Bankruptcy Code. The Capital Maintenance Claim is based on a commitment by the Debtor under the Guaranty to unconditionally and irrevocably guaranty the performance of Nexity Bank under the terms of the Capital Restoration Plan. Accordingly, the FDIC has taken the position that the entire amount of the Capital Maintenance Claim, $13,560,000, constitutes a default which must be immediately cured pursuant to section 365(o) of the Bankruptcy Code. The Debtor's sole remaining asset consists of a bank account (the "Bank Account") (which was formerly at Nexity Bank) with an approximate cash balance of $812,000.[2] In the event that the FDIC were to have an allowed administrative claim for the full amount of the Capital Maintenance Claim, the claim would effectively render the Debtor's estate administratively insolvent, dilute the payment to all other

---

[2] The Bank Account was not assumed by AloStar Bank of Commerce, but Alostar Bank of Commerce is the custodian of the Bank Account at the direction of the FDIC-R. Accordingly, in absence of the agreement embodied in the Stipulation, the Debtor believes that the FDIC-R would seek stay relief from the Court, if necessary, in order to setoff their Capital Maintenance Claim against the full balance of the Bank Account.

9

RLF1 4021985v. 1

administrative creditors and leave no cash for use by a chapter 7 trustee to orderly wind down the Debtor's estate.

20. By the proposed Settlement, the FDIC has agreed to a payment of $500,000 in partial satisfaction of their cure claim under section 365(o) of the Bankruptcy Code. The balance of the FDIC's claim, in the amount of $13,060,000, shall be an allowed priority unsecured claim under section 507(a)(9) of the Bankruptcy Code. Accordingly, the Stipulation will provide for the orderly conversion and wind-down of the Debtor's estate by allowing for the payment of all outstanding chapter 11 professional fees (estimated to be approximately $168,000) and leaving approximately $144,000 for a chapter 7 trustee to use in satisfying any trailing administrative expenses and to administer the chapter 7 case. The Stipulation also reflects a resolution between the FDIC and those most knowledgeable regarding the nature of the Guaranty and Capital Restoration Plan (the Debtor's management and its professionals), thereby avoiding an unnecessary and costly investigation by a chapter 7 trustee who is unlikely to be as familiar with the nature of the claim. Additionally, the Stipulation avoids any costly litigation over the extent and priority of the FDIC's claim.

21. The Parties engaged in an arms-length, good faith negotiation to agree to the terms of the Stipulation. The Debtors submit that the Stipulation is fair and reasonable under the circumstances, represents the exchange of reasonably equivalent value between the Parties and in no way unjustly enriches either of the Parties. Accordingly, the Stipulation is in the best interest of the Debtor's estates and its creditors and warrants approval by this Court.

## Notice

22. Notice of this Motion shall be provided by overnight mail to (i) the Office for the United States Trustee, (ii) counsel to the FDIC and FDIC-R and (iii) all parties who have timely

filed requests for notice under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

23.  No prior request for the relief sought herein has been made to this court or to any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as <u>Exhibit B</u>, approving the Stipulation, and granting such other and further relief as the Court may deem just and proper.

Dated: May 20, 2011
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700

*Counsel for the Debtor and Debtor in Possession*