# Exhibit A

ASSET PURCHASE AGREEMENT

dated as of January 2, 2014

by and among

JEOFFREY L. BURTCH, THE CHAPTER 7 TRUSTEE

FOR THE ESTATE OF

NEXITY FINANCIAL CORPORATION

as Seller,

and

SOUTH ATLANTIC BANK 401(K) EMPLOYEE STOCK OWNERSHIP PLAN

as Purchaser

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") dated as of January 2, 2014 is made and entered into by and between South Atlantic Bank 401(k) Employee Stock Ownership Plan (the "Purchaser"), and Jeoffrey L. Burtch, as chapter 7 trustee (the "Seller" or the "Trustee" and, together with the Purchaser, the "Parties," and each a "Party") for the bankruptcy estate of Nexity Financial Corporation (the "Estate" of the "Debtor"). Capitalized terms not otherwise defined herein have the meanings set forth in Article IX.

## BACKGROUND

A. The Debtor commenced its bankruptcy case (the "Bankruptcy Case") on July 22, 2010 (the "Petition Date") by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). On or about July 21, 2011, the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code. The Bankruptcy case is pending before the Court under Case No. 10-12293 (KJC).

B. On or about July 22, 2011, the Trustee was appointed.

C. On the Petition Date, the Debtor owned 25,000 shares of South Atlantic Bancshares, Inc. Thereafter, in December 2012, a 10% dividend was declared and the Debtor received an additional 2,500 shares bringing the total number of shares owned by the Debtor to 27,500.

D. The Trustee desires to sell, transfer, and assign to the Purchaser, and the Purchaser desires to purchase and acquire from the Trustee, the Purchased Assets (as defined below), which will be sold to the Purchaser pursuant to an order of the Court authorizing and approving, among other items, the sale of the Purchased Assets under section 363 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SALE OF ASSETS AND CLOSING

Purchased Assets.

Assets Transferred. On the terms and subject to the conditions set forth in this Agreement, the Trustee will sell, transfer, convey, assign and deliver to the Purchaser, and the Purchaser will purchase and pay for, at the Closing, all of the Estate's rights and title to, and interest in 9,419 shares of common stock of South Atlantic Bancshares, Inc. (the "Purchased Assets"):

Purchase Price; Allocation; Deposit; Taxes; Proration.

Purchase Price. The aggregate purchase price for the Purchased Assets is Ninety two thousand four hundred dollars ($92,400.00) in cash (the "Purchase Price"). The Purchase Price is payable at the Closing in the manner provided in Article 1.3.

Taxes. Any Taxes assessed upon and/or applicable to the transfer of the Purchased Assets to the Purchaser pursuant to this Agreement shall be paid by the Purchaser and shall be the sole responsibility of the Purchaser. The Purchaser agrees to indemnify the Trustee and/or the Estate for any liability that the Trustee and/or the Estate may incur in connection with the non-payment of any Taxes applicable to the transfer of the Purchased Assets to the Purchaser pursuant to this Agreement.

Closing. The consummation of the transaction contemplated in this Agreement (the "Closing") shall take place at the law offices of Cooch and Taylor, P.A. 1000 West Street, 10th Floor, Wilmington, DE 19801, or at such location as designated by Purchaser to Seller in writing, which Closing shall occur at the fifth Business Day after the Sale Approval Order becomes a final order (the "Closing Date"), unless extended by joint written agreement of Purchaser and Seller. Neither party shall be required to appear in person for the Closing. The Trustee will assign and transfer to the Purchaser all of the Estate's right, title and interest in and to the Purchased Assets (free and clear of all Liens other than Permitted Liens, and subject to entry of the Sale Approval Order (defined below)) by delivery of: (i) Bill(s) of Sale in form and substance reasonably satisfactory to the Trustee and the Purchaser (the "Bill of Sale"), duly executed by the Trustee; and (ii) such other good and sufficient instruments of conveyance, assignment and transfer, as prepared by Purchaser or its counsel, as shall be effective to vest in the Purchaser good title to the Purchased Assets (the Bill of Sale together with the other instruments referred to in clause (ii) shall be collectively referred to as the "Assignment Instruments").

Further Assurances; Post-Closing Cooperation.

Subject to the terms and conditions of this Agreement, at any time or from time to time after the Closing through the date the Bankruptcy Case is closed, at the Purchaser's request and expense, the Trustee shall execute and deliver to the Purchaser such other instruments of sale, transfer, conveyance, and/or assignment, provide such materials and information, and take such other actions as the Purchaser may reasonably deem necessary in order to effectively transfer, convey, and assign to the Purchaser, and to confirm the Purchaser's title to, all of the Purchased Assets.

If, in order to prepare its Tax Returns (or, in the case of the Trustee, also to administer the Estate), other documents or reports required to be filed with Governmental or Regulatory Authorities, or its financial statements, or in order to fulfill its obligations under this Agreement, it is necessary that a Party be furnished with information, documents, and/or records relating to the Purchased Assets, and such information, documents, and/or records are in the possession or control of the other Party, such other Party shall use its commercially reasonable efforts to furnish or make available such information, documents, and/or records (or copies thereof) at the requesting Party's cost and expense. Any information obtained by such

2

requesting Party in accordance with this paragraph shall be held confidential by such requesting Party.

## REPRESENTATIONS AND WARRANTIES OF SELLER

The Seller hereby represents and warrants to the Purchaser as follows:

Authority. As of the date hereof, subject to approval of the Court, the Seller has the legal capacity, right, power, and authority to enter into this Agreement and consummate the transactions contemplated hereby. Subject to approval of the Court, the Seller has duly executed and delivered this Agreement and this Agreement constitutes a valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms.

1.1   Title. At Closing, subject to approval of the Court and subject to any applicable orders of the Court, the Seller shall deliver title to the Purchased Assets free and clear of all Liens.

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

The Purchaser hereby represents, warrants, and covenants to the Seller (which representations, warranties, and covenants shall survive Closing) as follows:

Corporate Existence. Purchaser is an qualified KSOP Plan pursuant to Internal Revenue Code Sections 401(k)(1), 404(k), and 404(a)(9). The Purchaser has full power and authority to enter into this Agreement, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

Authority. The execution and delivery by the Purchaser of this Agreement, and the performance by the Purchaser of its obligations hereunder and thereunder, have been duly and validly authorized by the Purchaser. The Purchaser has duly executed and delivered this Agreement and this Agreement constitutes a valid and binding obligation of the Purchaser enforceable against the Purchaser in accordance with its terms.

Ability. The Purchaser has, and on the Closing Date will have, sufficient cash to pay the Purchase Price and to make all other necessary payments of fees and expenses in connection with the transactions contemplated by this Agreement.

No Conflicts. The execution and delivery by the Purchaser of this Agreement do not, and the performance by the Purchaser of its obligations under this Agreement and the consummation of the transactions contemplated hereby do not and will not, with or without the giving of notice and/or lapse of time:

conflict with or result in a violation or breach of any of the terms, conditions, or provisions of the organizational documents of the Purchaser; or

conflict with or result in a violation or breach of any term or provision of any

3

Law or Order applicable to the Purchaser or any of its assets and properties (other than such conflicts, violations, or breaches which could not in the aggregate reasonably be expected to adversely affect the validity or enforceability of this Agreement).

Governmental Approvals. No consent, approval, or action of, filing with or notice to any Governmental or Regulatory Authority on the part of the Purchaser is required in connection with the execution, delivery and performance by the Purchaser of this Agreement or the consummation by the Purchaser of the transactions contemplated hereby or thereby, except where the failure to obtain any such consent, approval or action, to make any such filing or to give any such notice could not reasonably be expected to adversely affect the ability of the Purchaser to consummate the transactions contemplated by this Agreement or to perform its obligations hereunder or thereunder.

Legal Proceedings. There are no Actions or Proceedings pending or, to the knowledge of the Purchaser, threatened against, relating to or affecting the Purchaser which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

Brokers. Except for Persons whose fees, commissions and expenses are the sole responsibility of the Purchaser, all negotiations relative to this Agreement and the transactions contemplated hereby have been carried out by the Purchaser directly with the Trustee without the intervention of any Person on behalf of the Purchaser in such manner as to give rise to any valid claim by any Person against the Trustee for a finder's fee, brokerage commission, and/or similar payment.

Disclaimer of Warranties; "AS-IS WHERE IS" Conveyance.

THE PURCHASER WARRANTS AND ACKNOWLEDGES TO, AND AGREES WITH THE SELLER, THAT THE PURCHASER IS PURCHASING THE PURCHASED ASSETS IN AN "AS IS WHERE IS" CONDITION WITH ALL FAULTS OR DEFECTS, PATENT, LATENT, OR OTHERWISE, AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND OR NATURE, BY OPERATION OF LAW OR OTHERWISE.

The Purchaser acknowledges that it is the Purchaser's responsibility to make such legal, factual, and/or other inquiries and investigations as the Purchaser may deem necessary, desirable, or appropriate with respect to the Purchased Assets. THE PURCHASER AGREES THAT NO GUARANTY, WARRANTY, AND/OR REPRESENTATION HAS BEEN EXPRESSED OR IMPLIED BY THE SELLER AND THAT THE PURCHASER HAS HAD FULL OPPORTUNITY TO INSPECT THE PURCHASED ASSETS AND UNDERSTANDS THAT THE PURCHASED ASSETS ARE BEING PURCHASED ON AN "AS IS, WHERE IS, WITH ALL FAULTS AND DEFECTS" BASIS. THE PURCHASER EXPRESSLY ASSUMES ALL RISK OF PROPERTY DAMAGE AND/OR LOSS, ENVIRONMENTAL LIABILITY, AND/OR PERSONAL INJURY AND/OR DEATH RELATING TO THE PURCHASED ASSETS ON OR AFTER THE CLOSING DATE, REGARDLESS OF WHETHER SUCH PROPERTY DAMAGE AND/OR LOSS OR

ENVIRONMENTAL LIABILITY, AND/OR PERSONAL INJURY AND/OR DEATH IS TO THE PURCHASER, ITS EMPLOYEES, OR ANY THIRD PARTY, AND REGARDLESS OF WHETHER SUCH LOSS, DAMAGE, ENVIRONMENTAL LIABILITY, PERSONAL INJURY, AND/OR DEATH IS RELATED TO THE CONDITION OF THE PURCHASED ASSETS (PATENT OR LATENT) OR WHETHER SUCH CONDITION AROSE BEFORE OR AFTER THE CLOSING DATE. The Purchaser acknowledges that the Purchaser has not relied, and is not relying, upon any information, document, sales brochure, due diligence/property information package or other literature, map or sketch, projection, pro forma statement, representation, guaranty, or warranty (whether express or implied, or oral or written, material or immaterial) that may have been given by or made by or on behalf of or omitted by the Seller, its agents, representatives, consultants, and/or attorneys with respect to (i) the quality, nature, adequacy, and/or physical condition of the Purchased Assets; (ii) the Purchased Assets' or their operation's compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions or restrictions of any governmental or quasi-governmental entity; or (iii) the Purchased Assets' or their operation's compliance with any applicable labor laws, encumbrance, license, reservation, covenant, condition, restriction, or any other matter affecting title to the Purchased Assets.

Except with respect to any obligations of the Seller under this Agreement and without in any way limiting the generality of the preceding subparagraphs (a) and (b), effective as of Closing, the Purchaser specifically acknowledges and agrees that the Purchaser hereby waives, releases, and forever discharges any claim it has, might have in the future, had, or may have against the Seller and/or Seller's agents with respect to the condition of the Purchased Assets, either patent or latent, the actual or potential income or profits derived or to be derived from the Purchased Assets, the taxes or assessments now or hereafter payable thereon, the compliance with any Laws, and any other state of facts that exists with respect to the Purchased Assets.

Except with respect to any obligations of the Seller under this Agreement, effective as of Closing, the Purchaser does hereby release, and forever discharge the Seller, its employees, representatives, agents, sub-agents, successors, assigns, and attorneys from any and all claims for damages and other causes of action at law or equity for injury, destruction, loss, or damage of any kind or character, to the person or property of the Purchaser and the Purchaser's employees, agents and representatives arising out of or in any way relating to any of the foregoing matters referred to in this Article.

## BANKRUPTCY COVENANTS

Bankruptcy Court Approval.

The Trustee shall use commercially reasonable efforts to obtain the Court's entry of the Sale Approval Order.

If the Sale Approval Order or any other orders of the Court relating to this Agreement shall be appealed by any party (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument

5

shall be filed with respect to any such order), the Trustee shall diligently defend against such appeal, petition or motion and shall use commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion; provided that the Trustee shall consult with the Purchaser at the Purchaser's reasonable request regarding the status of any such proceeding.

The Trustee shall use commercially reasonable efforts to consult with the Purchaser upon the Purchaser's reasonable request concerning the Sale Approval Order, and/or any other orders of the Court pertaining to the sale of the Purchased Assets, and the bankruptcy proceedings in connection therewith. In addition, the Trustee shall provide the Purchaser and the Purchaser's counsel with an opportunity to review and provide comments to such documents prior to submission to the court.

## COVENANTS OF PURCHASER

Provided the Trustee is not in default under this Agreement or there is a failure of a condition under Article VI of this Agreement, the Purchaser covenants and agrees with the Trustee that the Purchaser will comply with all covenants and provisions of this Agreement, except to the extent that the Trustee may otherwise consent in writing.

Fulfillment of Conditions. Provided the Trustee is not in default under this Agreement or there is a failure of a condition under Article VI of this Agreement, the Purchaser covenants and agrees with the Trustee that the Purchaser will execute and deliver at the Closing each document that the Purchaser is hereby required to execute and deliver as a condition to the Closing, and that, at all times from and after the date hereof until the Closing, the Purchaser will take all commercially reasonable steps necessary or desirable and proceed diligently and in good faith to satisfy each other condition to the obligations of the Trustee contained in this Agreement and will not take or fail to take any action that could reasonably be expected to result in the nonfulfillment of any such condition.

Bankruptcy Matters. The Purchaser agrees to cooperate with any reasonable request made by the Trustee in connection with his efforts to secure the entry of the Sale Approval Order, including, without limitation, making officers and other principals of the Purchaser available for testimony before the Court.

## CONDITIONS TO OBLIGATIONS OF PURCHASER

The obligations of the Purchaser hereunder to purchase the Purchased Assets are subject to the fulfillment, at or before the Closing, of each of the following conditions (all or any of which may be waived in whole or in part by the Purchaser in its sole discretion with the exception of the conditions listed in Sections 6.2(a) and (b) below):

Performance. The Trustee shall have performed and complied with, in all material respects, the agreements, covenants, and obligations required by this Agreement to be so performed or complied with by the Trustee at or before the Closing.

Orders and Laws.

There shall not be in effect on the Closing Date any Order or Law restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

The Court shall have entered the Sale Approval Order.

The Sale Approval Order shall have become a final order.

Deliveries. The Trustee shall have delivered to the Purchaser the Bill of Sale, and, if applicable, the other Assignment Instruments.

1.2     Representations and Warranties. The representations and warranties made by the Seller in this Agreement shall be true and correct in all material respects on and as of the Closing Date as though made on and as of the Closing Date.

## CONDITIONS TO OBLIGATIONS OF TRUSTEE

The obligations of the Trustee hereunder to sell the Purchased Assets are subject to the fulfillment, at or before the Closing, of each of the following conditions (all or any of which may be waived in whole or in part by the Trustee in his sole discretion with the exception of the conditions listed in Sections 7.3(a) and (b) below):

Representations and Warranties. The representations and warranties made by the Purchaser in this Agreement shall be true and correct in all material respects on and as of the Closing Date as though made on and as of the Closing Date.

Performance. The Purchaser shall have performed and complied with, in all material respects, the agreements, covenants, and obligations required by this Agreement to be so performed or complied with by the Purchaser at or before the Closing.

Orders and Laws.

There shall not be in effect on the Closing Date any Order or Law restraining, enjoining, or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

The Court shall have entered the Sale Approval Order.

The Sale Approval Order shall have become a final order.

## TERMINATION

Termination. This Agreement may be terminated, and the transactions contemplated hereby may be abandoned:

7

at any time before the Closing, by mutual written agreement of the Trustee and the Purchaser; or

at any time before the Closing, by the Trustee or the Purchaser, in the event that any Order or Law becomes effective restraining, enjoining, or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement, upon written notification of the non-terminating Party by the terminating Party; or

at any time before the Closing, by the Trustee or the Purchaser by giving written notice to the other, if the Closing shall not have occurred on or before sixty (60) days after the date of this Agreement by reason of the failure of (i) in the case of a termination by the Purchaser, any condition precedent under Article VI (unless the failure results from a material breach by the Purchaser of any representation, warranty, covenant or agreement contained in this Agreement) or (ii) in the case of a termination by the Trustee, any condition precedent under Article VII (unless the failure results from a material breach by the Trustee of any representation, warranty, covenant or agreement contained in this Agreement).

Effect Of Termination. If this Agreement is validly terminated pursuant to this Article, this Agreement will immediately become null and void, and no liability or obligation will exist on the part of either the Trustee or the Purchaser (or any of their respective officers, directors, employees, agents, attorneys, or other representatives or Affiliates); provided that (a) the provision with respect to warranties in accordance with Article 3.8 and expenses in accordance with Article 10.3, will continue to apply following any such termination, and (b) nothing shall release any Party from any liability resulting from a breach of this Agreement prior to such termination.

## DEFINITIONS

Definitions.

Defined Terms. As used in this Agreement, the following defined terms have the meanings indicated below:

"Actions or Proceedings" means any action, suit, proceeding, arbitration or Governmental or Regulatory Authority investigation.

"Agreement" means this Asset Purchase Agreement, as the same shall be amended from time to time.

"Business Day" means a day other than Saturday, Sunday or any day on which banks located in the State of New York are authorized or obligated to close.

"Closing" means the closing of the transactions contemplated by Article 1.3.

"Closing Date" means (a) the fifth Business Day after the Sale Approval Order becomes a final order, or (b) such other date as Purchaser and Trustee mutually agreed upon in writing.

8

"Contract" means any oral or written agreement, lease (including any lease of Personal Property or real property), license, evidence of Indebtedness, mortgage, indenture, security agreement or other contract.

"GAAP" means United States generally accepted accounting principles, consistently applied throughout the specified period and in the immediately prior comparable period.

"Governmental or Regulatory Authority" means any court, tribunal, arbitrator, authority, agency, commission, official or other instrumentality of the United States, any state, county, city or other political subdivision thereof or of the Commonwealth of the Bahamas.

"Indebtedness" of any Person means all obligations of such Person (i) for borrowed money, (ii) evidenced by notes, bonds, debentures or similar instruments, (iii) for the deferred purchase price of goods or services (other than trade payables or accruals incurred in the ordinary course of business), (iv) under capital leases and (v) in the nature of guarantees of the obligations described in clauses (i) through (iv) above of any other Person.

"Laws" means all laws, statutes, rules, regulations, ordinances and other pronouncements having the effect of law of the United States or any domestic, state, county, city or other political subdivision or of any Governmental or Regulatory Authority.

"Liabilities" means all Indebtedness, obligations and other liabilities of a Person (whether absolute, accrued, contingent, fixed or otherwise, or whether due or to become due).

"Licenses" means all licenses, permits, certificates of authority, authorizations, approvals, registrations, franchises and similar consents granted or issued by any Governmental or Regulatory Authority.

"Liens" means any mortgage, pledge, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind (including (without limitation) all "interests" as used in section 363(f) of the Bankruptcy Code), or any conditional sale Contract, title retention Contract or other Contract to give any of the foregoing.

"Order" means any writ, judgment, decree, injunction or similar order of any Governmental or Regulatory Authority (in each such case whether preliminary or final).

"Permitted Lien" means (i) any Lien for Taxes not yet due or being contested in good faith by appropriate proceedings for which adequate reserves have been established in accordance with GAAP, (ii) any statutory Lien arising in the ordinary course of business by operation of Law with respect to a Liability that is not yet due or delinquent and (iii) any minor imperfection of title or similar Lien which individually or in the aggregate with other such Liens does not have a material adverse effect on the Purchased Assets or Purchaser's use or enjoyment of such Purchased Assets.

"Person" means any natural person, corporation, limited liability company, general partnership, limited partnership, proprietorship, other business organization, trust, union, association or Governmental or Regulatory Authority.

"Sale Approval Motion" is the motion that the Trustee will file with the Court seeking entry of the Sale Approval Order.

"Sale Approval Order" is the order entered by the Court approving this Agreement and authorizing the sale of the Purchased Assets to the Purchaser that is final for purposes of appeal.

"Tax Code" means the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof, including, where permitted or required, combined or consolidated returns for any group of entities that includes any Seller.

"Taxes" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Tax Code §59A), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not and any expenses incurred in connection with the determination, settlement or litigation of any Liability for Taxes.

<u>Construction of Certain Terms and Phrases.</u> Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (iv) the terms "Article" or "Section" refer to the specified Article or Section of this Agreement; and (v) the phrase "ordinary course of business" refers to the Debtors' operation of its business. Whenever this Agreement refers to a number of days, such number shall refer to calendar days unless Business Days are specified. All accounting terms used herein and not expressly defined herein shall have the meanings given to them under GAAP. Any representation or warranty contained herein as to the enforceability of a Contract shall be subject to the effect of any bankruptcy, insolvency, reorganization, moratorium, or other similar law affecting the enforcement of creditors' rights generally and to general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at Law).

## MISCELLANEOUS

<u>Notices</u>. All notices, requests and other communications hereunder must be in writing and will be deemed to have been duly given only if delivered personally or by facsimile transmission, mailed (return receipt requested, first class postage prepaid) or overnight courier to the Parties at the following addresses or facsimile numbers:

If to Purchaser, to:

10

Richard N. Burch
Executive Vice President / Chief Financial Officer
South Atlantic Bank
P.O. Box 70130
Myrtle Beach, SC 29572
Fax: (843) 839-9804

If to the Trustee to:
Jeoffrey L. Burtch, Esquire
Chapter 7 Trustee
P.O. Box 549
Wilmington, DE 19899-1680
Fax: (302) 984-3939

with a copy (which shall not constitute notice) to:

Susan Kaufman, Esquire
M. Claire McCudden, Esquire
Cooch and Taylor
1000 West Street, 10th Floor
Wilmington, DE 19801
Fax: (302) 984-3939

All such notices, requests and other communications will (i) if delivered personally to the address as provided in this Article, be deemed given upon delivery, (ii) if delivered by facsimile transmission to the facsimile number as provided in this Article, be deemed given upon receipt, and (iii) if delivered by mail or overnight courier in the manner described above to the address as provided in this Article, be deemed given upon receipt (in each case regardless of whether such notice, request or other communication is received by any other Person to whom a copy of such notice, request or other communication is to be delivered pursuant to this Article). Either Party from time to time may change its address, facsimile number or other information for the purpose of notices to that Party by giving notice specifying such change to the other Party.

Entire Agreement. This Agreement supersedes all prior discussions and agreements between the Parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the Parties hereto with respect to the subject matter hereof and thereof.

Expenses. Except as otherwise expressly provided in this Agreement, whether or not the transactions contemplated hereby are consummated, each Party will pay its own costs and expenses incurred in connection with the negotiation, execution and closing of this Agreement and the transactions contemplated hereby and thereby. The Purchaser shall pay all Taxes applicable to the sale of the Purchased Assets.

Waiver. Any term or condition of this Agreement may be waived at any time by the Party that is entitled to the benefit thereof, but no such waiver shall be effective unless set forth

in a written instrument duly executed by or on behalf of the Party waiving such term or condition. No waiver by any Party of any term or condition of this Agreement, in any one or more instances, shall be deemed to be or construed as a waiver of the same or any other term or condition of this Agreement on any future occasion. All remedies, either under this Agreement or by Law or otherwise afforded, will be cumulative and not alternative.

Amendment. This Agreement may be amended, supplemented or modified only by a written instrument duly executed by or on behalf of each Party hereto.

No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party hereto and their respective successors or permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other Person.

No Assignment; Binding Effect. Neither this Agreement nor any right, interest or obligation hereunder may be assigned by any Party hereto without the prior written consent of the other Party hereto and any attempt to do so will be void, except (a) for assignments and transfers by operation of Law and (b) that the Purchaser may assign any or all of its rights, interests and obligations hereunder to an Affiliate or another designee, provided that any such Affiliate agrees in writing to be bound by all of the terms, conditions and provisions contained herein, but no such assignment referred to in clause (b) shall relieve the Purchaser of its obligations hereunder. Subject to the preceding sentence, this Agreement is binding upon, inures to the benefit of, and is enforceable by the Parties hereto and their respective successors and assigns.

Headings. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future Law, and if the rights or obligations of any Party hereto under this Agreement will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof and (c) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

Counterparts. This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

Governing Law. This Agreement shall be governed by and construed in accordance with the applicable provisions of the Bankruptcy Code and the Laws of the State of Delaware applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

Specific Enforcement. Each of the parties hereto agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the parties shall

be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement exclusively in a state or federal court located in Wilmington, Delaware.

<u>Submission to Jurisdiction; Waiver of Jury Trial</u>.

The Parties agree that the Court (or to the extent that the reference is withdrawn, the United States District Court for the District of Delaware) shall have exclusive jurisdiction over any dispute or controversy arising out of or relating to this Agreement or, if the Court refuses to exercise jurisdiction over such controversy, the courts of the State of Delaware, New Castle County shall have exclusive jurisdiction. Each of the Parties irrevocably submits to the jurisdiction of each such court, waives any objection to venue and defense of inconvenient forum to the maintenance of any action or proceeding so brought, agrees that all claims in respect of the Action or Proceeding shall be heard and determined only in any such court and agrees not to bring any Action or Proceeding arising out of or relating to this Agreement or any transaction contemplated hereby (other than enforcement of judgments obtained therein) in any other court and waives any bond, surety, or other security that might be required of any other Party with respect thereto.

THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY AND THAT ANY PROCEEDING WHATSOEVER BETWEEN THEM RELATING TO THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

LIMITATION OF LIABILITY. IN NO EVENT SHALL EITHER PARTY BE OBLIGATED OR LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**BALANCE OF THE PAGE INTENTIONALLY BLANK**


IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered as of the date written above,

SELLER: _____

Jeoffrey L. Burtch
Chapter 7 Trustee for the Estate of Nexity Financial Corporation.

PURCHASER:

SOUTH ATLANTIC BANK 401(K) EMPLOYEE STOCK OWNERSHIP PLAN

By: _____
Name: Richard N. Burcht
Title: EVP & CFO

*Signature Page to Asset Purchase Agreement*

14